IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CREATHA WATSON,              )
                             )
    Plaintiff,               )
                             )
        v.                   )     CA 05-208Erie
                             )
JO ANNE B. BARNHART,         )
Commissioner of Social Security,  )
                             )
    Defendant.               )

OPINION

COHILL, D.J.

Creatha Watson ("Claimant") here appeals the Commissioner's denial of her claim for disability benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§401-433, 1381-1383f. Specifically, Watson appeals the determination that she is not disabled because she can perform a limited range of light work. Before the Court are cross-motions for summary judgment filed by the parties to this appeal pursuant to Fed. R. Civ. P. 56. We have jurisdiction under 42 U.S.C. § 405(g).

Having considered the arguments of the parties, the administrative record, and the applicable law, for the reasons set forth below we will grant summary judgment in favor of the Commissioner and against the Claimant.

I. Background

Creatha Watson was fifty-four years old at the time of the hearing. She has an eleventh grade education and has both semiskilled and skilled work experience. (Tr. 22). Watson was in an automobile accident on January 30, 2003, and the medical conditions which form the basis of her disability claim developed after that date. She continued to work as a machine operator after the accident, until she was laid off in March 2003. (Tr. 54).

Watson filed an application for benefits on May 27, 2003, alleging disability since April 29, 2003 due to head, back, and neck injuries (Tr. 45, 54). These claims were denied on August 27, 2003. (Tr. 27-32).

Watson's claims were heard by Administrative Law Judge ("ALJ") James J. Pileggi on January 20, 2005. (Tr. 334-364). Claimant was represented by counsel and testified at the administrative hearing. She testified that she had previously worked as an operator or packer, a restaurant cook, a housekeeper in a group home, and running a machine that made parts for cars. (Tr. 340-342). Regarding her physical condition, Watson explained that she wears a patch to control the pain in her back. (Tr. 344-45). At the time of the hearing she was wearing a brace on her left hand for arthritis; she is right-handed. (Tr. 342-43, 347-48). She was also having difficulties with her right hand, which she described as "freezing up," and was scheduled to have surgery for carpel tunnel syndrome the following month. (Tr. 351). She stated that she could bend, and could lift about 25 pounds with both hands. (Tr. 347).

Watson testified that she could walk a block before needing to sit down and rest, and could stand for about five minutes. (Tr. 346). She could sit for about twenty-five minutes before feeling pain in her knees and needing to stand. (Tr. 347). She also reported having migraine headaches, which were helped by medication. (Tr. 350). In addition, she was being treated for hepatitis C, and had undergone surgery for cervical cancer. (Tr. 351-353).

Claimant also testified about her daily life. She was able to care for her own personal needs, do light housework and laundry, and go shopping. (Tr. 349). She had help at home from her fiancé. (Tr. 354). She reported no hobbies or interests except watching television.

**Medical Records**

Briefly, Claimant's medical history shows that she was in an automobile accident on January 29 or 30, 2003. She was diagnosed with endocervical dysplasia on April 29, 2003, and underwent surgery for that condition. (Tr. 98-107; 138-140). This no longer causes significant problems. (Tr. 351).

Following the accident, Claimant was treated in the emergency room of St. Vincent Health Center for a laceration of her left elbow and for right knee pain. X-rays of her cervical spine were normal. (Tr. 124) She diagnosed with a head injury and cervical strain. (Tr. 124).

2

On February 14, 2003, her family physician, David Fox, M.D., treated her for complaints of headaches and neck and back pain. Dr. Fox diagnosed cervical strain, thoracic strain, and lumbar strain. He prescribed ibuprofen, and referred her to physical therapy. (Tr. 156).

Treatment notes from Saint Vincent Rehab Solutions beginning June 24, 2003 show that Watson complained of constant pain in her head/cervical, thoracic and lumbar region. (Tr. 179-192). She was having difficulty sleeping, and had a pins and needles feeling in her right hand. (Tr. 181). Treatments notes from her second session showed that she was "feeling a little better." (Tr. 180). However, she continued to experience headaches, and a CT scan of her brain showed a possible small aneurism. (Tr. 239). She discontinued physical therapy until she could have a follow-up consultation with a neurosurgeon. (Tr. 230).

Jonathan Borden, M.D. performed a neurological evaluation on July 31, 2003. (Tr. 246-47). Watson had normal motor and grip strength, sensation, reflexes, and gait. (Tr. 247). He reported that the Claimant was taking over-the-counter medication for headaches, and recommended that she have an angiogram to rule out an aneurysm. Angiography performed on August 29, 2003, showed dolichoectasia of the basilar artery with no aneurysm. (Tr. 280). Claimant was advised not to smoke and to control her hypertension. (Tr. 244).

A disability determination examination was performed by Valerie S. Gilreath III, D.O. on August 13, 2003. (Tr. 193-99). Dr. Gilreath concluded that the Claimant had normal range of motion in all joints. There was no joint deformity (Tr. 197). She complained of neck and back pain along with cramping of the hands, but there were no signs of rheumatoid arthritis. (Tr. 198). Dr. Gilreath further stated that the Claimant could frequently lift and carry 25 pounds, but was limited to one hour or less of standing and walking per day. She could sit for 8 hours per day, and her push/pull capacity was unlimited, other than by the lifting and carrying. (Tr. 200). The claimant could occasionally bend, kneel, stoop, crouch, and balance, and had no other physical or environmental limitations. (Tr. 201). Dr. Gilreath noted a lack of effort on

grip strength testing. (Tr. 197).

V. Rama Kumar, M.D., reviewed Claimant's medical records on August 20, 2003. He stated that she could lift 25 pounds frequently and 50 pounds occasionally, stand/walk for six hours per day, and sit for six hours per day. There were no additional limitations. (Tr. 207-10).

The Claimant continued to complain of back pain and headaches. An x-ray of her lumbar spine performed on February 6, 2004 showed mild spurring. (Tr. 270). She used Celebrex to control her pain. (Tr. 259-670). She was diagnosed with mild degenerative joint disease, given medication, and instructed to walk and exercise. (Tr. 257).

Dr. Namirah Jamshed, M.D., performed a neurological examination in April of 2004. The Claimant reported having had a headache for one year. She also complained of occasional dizziness and low back pain. She did not report vision problems, and had recently seen an opthamologist. (Tr. 291). The neurological exam was "unremarkable." (Tr. 291). She was given a Duragesic patch for pain control in June of 2004. (Tr. 285). A follow-up appointment showed that the patch was effective. An x-ray of her cervical spine done on September 12, 2004 showed no acute cervical spinal fracture or any significant arthritis change. (Tr. 316). On September 17, 2004, Watson reported that with the patch she was quite functional. (Tr. 316).

Claimant was subsequently diagnosed with hepatitis C and with carpal tunnel syndrome in her right hand. (Tr. 307-09). She was referred for hand surgery.

**The ALJ's Decision**

A vocational expert testified that considering the Claimant's age, educational background, work experience, and residual functional capacity, she was capable of adjusting to work at a light level of exertion as a security guard, an information clerk, and a sales clerk. (Tr. 359).

The ALJ left the record open for further medical information on her hand, as well as on her treatment for hepatitis C. (R. 362-63).

By decision dated March 10, 2005, Watson's claims were denied. (Tr. 15-23).

4

The ALJ concluded that Watson had severe impairments which do not meet or equal the criteria of listed medical impairments. (R. 22 finding 3). The ALJ found Claimant's testimony regarding her medical limitations to be not entirely credible. (R. 22 finding 4). He concluded that Watson has the residual functional capacity to perform the exertional demands of light work, or work which requires a maximum lifting of 20 pounds and frequent lifting of 10 pounds. She has non-exertional limitations and cannot crawl, climb, balance, kneel, or operate foot controls. Moreover, she cannot engage in frequent fine manipulation or constant gross manipulation. (Tr. 22 finding 5). She cannot perform any of her past relevant work. (R. 22 finding 6).

The Appeals Council declined to review the ALJ's decision, and this civil action followed. We have carefully reviewed the entire record and will not reweigh the evidence of record. *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

## II. Standard of Review

The standard of review used by this Court in reviewing the decision of the Commissioner in social security cases is whether substantial evidence exists in the record to support the decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Judicial scope of review of a social security case is based upon the pleadings and transcript of the record. 42 U.S.C. § 405(g). We review the Commissioner's decision only to determine whether she applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *Schaudeck v. Commissioner of Social Sec. Admn.*, 181 F.3d 429, 431 (3d Cir. 1999). The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). We may not undertake a *de novo* review of the decision, and may not reweigh the evidence of record. *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

"Substantial evidence 'does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). Substantial evidence has been defined as more than a mere scintilla. *Plumer*, 186 F.3d at 427; *Hess v. Secretary*, 497 F.2d 837, 838 (3d Cir. 1974). Evidence is not substantial if the Commissioner fails to resolve conflicts created by countervailing evidence, particularly that of treating physicians, or if it is not evidence but mere conclusion. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Commissioner may accept or reject testimony or other evidence, but is not free to mischaracterize the evidence or to reject it for no reason or for the wrong reason. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).

To be eligible for social security disability benefits, a plaintiff must demonstrate an inability to engage in substantial gainful activity because of a medically-determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

To facilitate the disability determination, the Commissioner has set forth a five-step sequential analysis for an ALJ to use when evaluating the disabled status of a claimant. 20 C.F.R. § 404.1520(a); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). The ALJ must determine (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent the performance of past relevant work; and (5) if the claimant is incapable of performing past relevant work, whether he can perform any other work that exists in the national economy, in light of his age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520.

The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to his previous employment. *Dobrowolsky*, 606 F.2d at 406. Once this burden is met, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity. *Id.*

### III. Analysis

Applying this five-part framework to the Claimant's case, the ALJ found that the Claimant has not engaged in substantial gainful activity during the relevant period. ( Tr. 21). She has a severe impairment or impairments that do not meet or medically equal one of the listed impairments. ( Tr. 22). She is unable to perform her past relevant work. (Tr. 22). However, she is able to make a vocational adjustment to work at a light exertional level as a security guard, an information clerk, or a salesclerk. (Tr. 22). Accordingly, the ALJ found that Watson was not disabled. (Tr. 22).

The Claimant objects to the finding that she can perform a limited range of light work. She argues that she cannot perform the standing or walking required for light work, and that she cannot manipulate objects with either hand. Although Claimant does not point to any specific contradictory medical evidence, our review of the record shows that Dr. Gilreath concluded that Watson could only walk or stand for one hour a day, whereas Dr. Kumar stated that she could stand/ walk for the six hours a day required to perform light work. The ALJ properly evaluated the conflicting record evidence, and concluded that Watson could perform light work with significant non-exertional limitations. Dr. Kumar's opinion is supported by the record. The ALJ explained that there was ample medical evidence that Watson could lift and carry 25 pounds, and the Claimant herself testified that she could lift approximately that weight using both hands. Moreover, the ALJ took Watson's particular non-exertional limitations into account, and found that she could not crawl, climb, balance, kneel, operate foot controls, or engage in frequent fine manipulation or constant gross manipulation. Despite her complaints of cervical and lower back pain and severe headaches, the evidence showed that these were

controlled by medications and that they were not caused by abnormalities.

The ALJ specifically found that Watson's own testimony that she is disabled and cannot work was not entirely credible. The ALJ cited to evidence that the Duragestic patch relieved her pain, and that the Claimaint stated in September 2004 that with the patch she was "quite functional." (Tr. 19, 316).

We find that the ALJ properly considered the medical evidence, and rendered a decision that is supported by substantial evidence in the record.

### Conclusion

For the reasons set forth above, we find that the ALJ's determination that Claimant Creatha Watson is not disabled withing the meaning of the Act is supported by substantial evidence. Accordingly, we will grant summary judgment in favor of the Commissioner and against the Claimant. An appropriate Order follows.

March 5, 2007
Date

Maurice B. Cohill, Jr.
Senior United States District Court Judge

8